IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                            No. 1:18-CR-02945-WJ

JANY LEVEILLE, et al.,

      Defendants.

## DEFENDANTS SUBHANAH AND HUJRAH WAHHAJ'S JOINT OBJECTIONS TO LIFE SENTENCE

Defendant Subhanah Wahhaj, through counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, and Justine Fox-Young, PC, by Justine Fox-Young, and Defendant Hujrah Wahhaj, through counsel, Donald F. Kochersberger III and Marshall Ray, respectfully submit this objection to a life sentence for conviction of kidnapping resulting in death pursuant to the 8th amendment of the United States Constitution. Subhanah Wahhaj and Hujrah Wahhaj should be sentenced to something less than life in prison because a sentence of life imprisonment is grossly disproportionate and unconstitutional given that they were not principal actors in the death that occurred.

### BACKGROUND

Defendants were arrested on August 31, 2018 and subsequently charged in a Superseding Indictment with conspiracy to provide material support to terrorists (count 1), providing material support to terrorists (count 2), conspiracy to kill officers and employees of the United States contrary to 18 U.S.C. § 1117 (count 3), conspiracy to commit an offense against the United States (count 4), aiding and abetting Defendant Leveille's illegal possession of a firearm (count 5), conspiracy to commit kidnapping (count 6), and kidnapping resulting in death (count 7). [Doc. 85]. Subhanah and Hujrah Wahhaj were not charged in count 3, and Siraj Wahhaj was not charged

in counts 6 or 7. *Id.* Counts 4 and 5 were ultimately dismissed prior to trial on the government's motion. [Doc. 982].

Subhanah Wahhaj and Hujrah Wahhaj were convicted of conspiracy to commit kidnapping and kidnapping, which were listed as count 4 and count 5 on the verdict form. [Doc. 1011]; *compare* superseding indictment [Doc 85] (listing the preceding counts as counts 6 and 7). They were found not guilty of conspiracy to provide material support to terrorists and providing material support to terrorists. Their convictions stem from allegations of their involvement in the kidnapping and death of A.G., who was their nephew by way of their brother and co-conspirator Siraj Wahhaj. The child died from unspecified causes at the same property at which Subhanah and Hujrah lived in Amalia, New Mexico. At trial, it was clear that Subhanah and Hujrah were not principal actors in the commission of the act of kidnapping, that A.G.'s death was not attributable to any act or omission of Subhanah or Hujrah, and that his death was not foreseeable to them. *See* Doc. 1044 (Motion for Judgment of Acquittal at 3-8).

And yet, in spite of this factual background, 18 U.S.C. Section 1201 requires that anyone convicted kidnapping that results in the death of any person "shall be punished by death or life imprisonment." This is the sentence Ms. Wahhaj must receive under the statute because the statute purports to deprive the Court of discretion to sentence Subhanah and Hujrah to less. Such a mandated sentence is both cruel and unusual and contrary to the Eighth Amendment.

## ARGUMENT

The Eighth Amendment of the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should

be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59(2010). Eighth Amendment challenges to the proportionality of a sentence are either categorical or based on the circumstances of an individual case. *See, e.g., Miller v. Alabama*, 567 U.S. 460, 480 (2012); *Graham*, 560 U.S. at 59.

In the categorical vein, the Eighth Amendment guarantees individualized sentencing to defendants facing the death penalty, *see Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), and to juveniles facing a life sentence without the possibility of parole. *See Miller*, 567 U.S. at 480. "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" *Id*. at 469 (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). That guarantee "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." *Id.* (Internal quotations omitted). A sentence cannot be grossly disproportionate to the severity of the crime or involve unnecessary infliction of pain. *See United States v. O'Driscoll*, 761 F.2d 589, 599 (10th Cir. 1985).

Through years of United States Supreme Court jurisprudence, punishments that run afoul of the Eighth Amendment have been modified to meet "the evolving standards of decency that mark the progress of a maturing society" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotations and citations omitted); *see also Harmelin v. Michigan*, 501 U.S. 957, 990 (1991) ("Our 20th–century jurisprudence has not remained entirely in accord with the proposition that there is no proportionality requirement in the Eighth Amendment, but neither has it departed to the extent that [precedent] suggests.") In *Harmelin*, the defendant was sentenced under state law to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence, with the controlling opinion concluding that the Eighth Amendment contains a "narrow

proportionality principle," that "does not require strict proportionality between crime and sentence" but "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id*. at 997. (Kennedy, J., concurring in part and concurring in judgment).

In *Solem v. Helm*, the Supreme Court adopted a three-pronged analysis for reviewing individualized Eighth Amendment proportionality challenges. 463 U.S. 277, 292 (1983). Those factors include: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id*; *see also United States v. Angelos*, 433 F.3d 738, 752 (10th Cir. 2006) (discussing the original source of the factors). "Such penalties for such offenses amaze those who . . . believe that it is a precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States,* 217 U.S. 349, 366–367 (1910).

The Supreme Court later narrowed the rule in *Weems* and *Solem* by instructing that the first factor is dispositive. *Harmelin*, 501 U.S. at 957; *see also Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999) ("Justice Kennedy's opinion in *Harmelin* narrows *Solem* and sets forth the applicable Eighth Amendment proportionality test."). While narrowing *Solem*, the Supreme Court noted that: [it has] long recognized, of course, that the doctrine of *stare decisis* is less rigid in its application to constitutional precedents[.]" *Harmelin*, 501 U.S. at 965. Ultimately, the question underlying the first prong of the analysis is whether the sentence is grossly disproportionate to the criminal activity. *Hawkins*, 200 F.3d at 1282.

### A. Life imprisonment would be a grossly disproportionate punishment given Subhanah's and Hujrah's degree of involvement and culpability

Such a track record and the rulings in *Harmlin* and its progeny do not bar this Court from finding that a life sentence for Subhanah and Hujrah would be grossly disproportionate, and the

driving concept is measuring culpability and the nature of the offender when deciding the question. *See id.* at 1281 ("The *Harmlin* opinion was a fractured one, and it left the meaning of *Solem* less than clear."). Indeed, the dissents in *Harmlin* emphasize the fracture in the opinion. *See* 501 U.S. 957, 1013 (1991) (White J., dissenting) ("Not only is it undeniable that our cases have construed the Eighth Amendment to embody a proportionality component, but it is also evident that none of the Court's cases suggest that such a construction is impermissible."); *id.* at 1028 (Marshall J., dissenting) ("Michigan's law mandating life sentences with no possibility of parole even for first-time drug possession offenders is unconstitutional."); *id*. (Stevens J., dissenting) (When compared to capital punishments, "the imposition of a life sentence without possibility of parole on this petitioner is equally capricious."). "American criminal law has long considered a defendant's intention-and therefore his moral guilt-to be critical to 'the degree of [his] criminal culpability,' and the Court has found criminal penalties to be unconstitutionally excessive in the absence of intentional wrongdoing." *Enmund v. Florida*, 458 U.S. 782, 800 (1982) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 698 (1975) (alterations in original)).

A line of cases, which lend guidance here, discuss culpability when sentencing a class of offenders that mismatch the severity of a penalty. *See generally Miller*, 567 U.S. 460. These cases focus on juvenile offenders in large part because of their lesser culpability. *Id. Graham* held that sentencing juvenile offenders who have not committed homicide crimes to life in prison without a meaningful opportunity for release is unconstitutional. 560 U.S. 48. "[B]ecause juveniles have lessened culpability[,] they are less deserving of the most severe punishments." *Id.* at 68 (quoting *Roper*, 543 U.S. at 569)). Essentially, *Roper* held that the Eighth Amendment bars capital punishment for children, and *Graham* concluded that the Amendment prohibits a sentence of life without the possibility of parole for a juvenile convicted of a nonhomicide offense. *See*

*generally Miller* 567 U.S. 460 (discussing how *Graham* and its progeny likened life without parole to the death penalty).

While in this case the Court is not sentencing a juvenile, the underlying theory that an individual with lessened culpability should receive less punishment, whether due to youth or other factors, applies equally here and warrants excluding a life sentence for Subhanah and Hujrah. Both Defendants ask the Court to consider their lesser culpability as women in a rigidly male-dominated environment with little real choice but to care for their children and do as they were told.[1] The evidence at trial easily demonstrated that Hujrah and Subhanah did not intend to harm the decedent child, nor were they principal actors in either his kidnapping or death. Given the circumstances, their say in the matter was not significantly greater than that of a child.

To be sure, culpability remains operative with adult offenders. In *Enmund*, the court recognized that "Enmund himself did not kill or attempt to kill; and, as construed by the Florida Supreme Court, the record before us does not warrant a finding that Edmund had any intention of participating in or facilitating a murder." 458 U.S. 782, 798. The *Edmund* court ultimately held that treating all individuals the same, including *Enmund*, who was not a hands-on killer, and sentencing them all to the death penalty was impermissible under the Eighth Amendment. *Id.* at 801 ("Enmund's criminal culpability must be limited to his participation in the robbery, and his punishment must be tailored to his personal responsibility and moral guilt. Putting Enmund to death to avenge two killings that he did not commit and had no intention of committing or causing

---

[1] The government has not missed an opportunity to emphasize that the spiritual leader for this group—the prophet figure—was a woman, Jany Leveille. It is true that the evidence showed that Jany Leveille claimed a special elevated status because of her assertions of divine communication and authority. Subhanah and Hujrah enjoyed no such leadership status. Moreover, the writings of Jany Leveille introduced to the jury in this case outline a patriarchal order in which women are subservient to men.

does not measurably contribute to the retributive end of ensuring that the criminal gets his just deserts."). In this case, perversely, the principal actor, Siraj Wahhaj, is the only one of the four co-defendants who went to trial who is not exposed to a mandatory life sentence. In the case of Subhanah Wahhaj, it is clear from the record in this case that while she was present sometime after Mr. Wahhaj took the child from the child's mother, and that she did not intervene to return the child, she in no way orchestrated or supported his kidnapping. Nor was she involved in the ruqya that the government asserts led to A.G.'s death. Similarly, Hujrah Wahhaj allowed her brother to bring his child to her home and travelled to live with the other defendants and their children to live in Amalia. Hujrah did not intervene or attempt to take the child away from Mr. Wahhaj. Nor did she contact authorities. Otherwise, however, her participation was to a far lesser degree by comparison.

The reasoning in *United States v. Gurule*, in which the defendant was sentenced to life imprisonment as part of the "three strikes" rule, is illuminating. 461 F.3d 1238, 1242 (10th Cir. 2006) ("[C]ourts must also be mindful that "legislatures may punish recidivists more severely than first-time offenders.") (quoting *United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir. 1999) (en banc). The *Gurule* court held that, largely due to Gurule's criminal history, it was not the "rare case in which the initial comparison of the offense and the sentence leads to an inference that the punishment is grossly disproportionate to the crime." *Id* at 1247. However, the court poignantly questioned the unclear standard set before it by the Supreme Court:

> In light of the holding in *Harmelin* that a sentence of imprisonment for life without possibility of parole is not grossly disproportionate when meted out to a first offender for possession of 650 grams of cocaine, it may be wondered if a life sentence would ever be grossly disproportionate for a serious violent felony….

*Gurule*, 461 F.3d at 1247; *see also Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) ("[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").

Nonetheless, if such a disproportionate sentence for a serious felony is at all possible, it is here—Subhanah's and Hujrah's cases are extraordinary. Unlike *Gurule*, neither Hujrah nor Subhanah have a criminal history. Yet both have now been convicted of a charge that mandates life in prison even though the evidence at trial bears out that they had the least culpability possible for conviction. These two women are not the individuals Congress, or the courts, have previously had in mind when assessing gross disproportionality.

### B. Subhanah and Hujrah are not the typical 18 U.S.C. § 1201 defendants

18 U.S.C. § 1201 mandates death or life imprisonment for anyone convicted of kidnapping that results in the death of any person. The statute is clearly intended to punish individuals that were a direct cause to the death or otherwise more fully participated in the kidnapping. To be sure, considering the sentences and the characteristics of the offenders in other cases is necessary to apply the second and third factors: "(ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem*, 463 U.S. 277 at 292.

In the Tenth Circuit, the typical kidnapping offender is leagues away from Subhanah and Hujrah. For example, in *United States v McGowan*, the defendant "admitted that he took the five-year-old child of his girlfriend in his car[, and] following a lengthy police chase, crashed the car into a construction barricade." 768 Fed. Appx. 873, 874 (10th Cir. 2019). He got out of the car, pointed his firearm at officers, and he was shot when he refused to lower the firearm. *Id.* Officers discovered the body of the child in the passenger seat with a gunshot wound on the back of her head. *Id.* There was no evidence of a bullet entering the vehicle, and the investigation concluded the girl was killed by the defendant's firearm from within the vehicle. *Id.* He was sentenced to life in prison. *Id.* This clearly distinguishes the type of actions that warrant a life sentence and sets

Subhanah and Hujrah apart from the typical perpetrators of crime that would warrant the second harshest sentence available under federal law.

The typical 1201 offender in other federal circuits is of the same ilk as the defendant in *McGowan* and could not be more different than Subhanah and Hujrah Wahhaj. In *United States v. Jones*, the defendant was convicted of kidnapping resulting in death and was sentenced to death in accordance with the jury's recommendation. 527 U.S. 373, 379 (1999). The *Jones* defendant kidnapped an airman from the Goodfellow Air Force Base at gun point, sexually assaulted her, and repeatedly struck her in the head with a tire iron until she died. *Id.* at 376. Such brutal acts are a far cry from what Subhanah and Hujrah were doing in the instant case. The women cleaned and cooked, and cared for their respective children under difficult conditions, at the command of men. Hujrah had no husband and was a single mother—something that put her at a further disadvantage in the patriarchal culture in which she lived. Similar to *Jones*, in *In re Hall*: "Hall and his conspirators kidnapped and then repeatedly raped a 16-year-old high school student. They then took turns beating her with a shovel, before covering her with gasoline and burying her alive." 979 F.3d 339, 341 (5th Cir. 2020). He was convicted of four federal crimes, including kidnapping resulting in death, and sentenced to death. *Id.*

The defendants in *United States v. Whitmore*, were convicted of kidnapping resulting in death and sentenced to life in prison. 386 Fed. Appx. 464, 468 (5th Cir. 2010). Ms. Whitmore's co-defendants tied up and beat two individuals when purchasing marijuana and loaded them into a vehicle while Whitmore supported them. *Id.* at 467. Her culpability was evidenced by:

> "(1) Whitmore saw Mogilles lying on the patio of Pugh's home "pleading" after he had been assaulted; (2) Whitmore saw Mogilles being taken to the SUV; (3) Whitmore followed the SUV to the scene of murder thereby allowing Pugh and Borden to abandon and burn the vehicle; (4) Whitmore exercised control over the SUV while in transit to the murder scene by making it stop while she purchasing gasoline for the Scion; (5) and Whitmore lied about knowing Pugh and Borden and

why her Scion was in the area when confronted by police only to later admit that she had been present at the outset of the criminal venture."

Evidence showed that Subhanah and Hujrah were far less involved in what happened to A.G. They did not transport A.G. They were not present for the physical taking of the child. They did not have a say or otherwise participate in forming a plan to remove A.G. from his mother. They were, in other words and unlike Ms. Whitmore, minor players who were not "present at the outset of the criminal venture." The above-discussed cases show that Subhanah and Hujrah are not the offenders for whom a life sentence without the possibility of parole is contemplated under the statute. Rather, this is the extraordinary case where a life sentence for either would constitute cruel and unusual punishment in violation of the Eighth Amendment and, therefore, is an impermissible sentence under the facts of this case.

## CONCLUSION

For all of the foregoing reasons, the Court should hold that a life sentence in this situation for Subhanah Wahhaj and Hujrah Wahhaj is contrary to the Eighth Amendment.

Respectfully submitted,

*/s/ Ryan J. Villa*
Ryan J. Villa
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave NW Ste. C2
Albuquerque, NM 87113
(505) 639-5709
ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young
Justine Fox-Young, PC
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Defendant Subhanah Wahhaj*

*/s/ Marshall J. Ray*
Marshall J. Ray
Law Offices of Marshall J. Ray, LLC
514 Marble Ave, NW
Albuquerque, NM 87111
(505) 312-2748
mray@mraylaw.com

*/s/ Donald F. Kochersberger III*
Donald F. Kochersberger III
BUSINESS LAW SOUTHWEST
6801 Jefferson St NW Suite 210
Albuquerque, NM 87109-4390
(505) 848-8581
Donald@BusinessLawSW.com

*Attorneys for Defendant Hujrah Wahhaj*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/*Ryan J. Villa*
RYAN J. VILLA