IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 18-2945 WJ |
| ) | |
| HUJRAH WAHHAJ and ) | |
| SUBHANAH WAHHJ, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO SENTENCING MEMORANDA FILED BY DEFENDANTS HUJRAH AND SUBHANAH WAHHAJ**

The United States of America respectfully submits this response to the sentencing memoranda filed by Defendants Hujrah Wahhaj (Hujrah) (Doc. 1116) and Subhanah Wahhaj (Subhanah) (Doc. 1114) and requests that the Court impose the mandatory sentence of life imprisonment for both defendants.

I.   FACTUAL AND PROCEDURAL HISTORY

On October 17, 2023, after a nearly month-long trial, a jury returned a verdict finding Hujrah and Subhanah guilty of conspiracy to commit kidnapping resulting in death and of kidnapping resulting in death.   Docs. 1014, 1011.   These crimes were in violation of 18 U.S.C. §§ 1201(c), 1201(a), and 2 and carry a mandatory sentence of life imprisonment.   S*ee* Doc. 85.

Presentence reports (PSRs) for both Hujrah and Subhanah were disclosed on January 31, 2024.   Docs. 1096, 1098.   The PSRs for both Hujrah and Subhanah calculate their total offense level as 43 and criminal history category as I, resulting in a guideline imprisonment range of life imprisonment, while recognizing that the crimes of conviction require sentences of life imprisonment without release.   Doc. 1096 at ¶¶ 69-70; Doc. 1098 at ¶¶ 67-68.

On February 16, 2024, Hujrah and Subhanah, through counsel, filed objections to receiving sentences of life imprisonment and objections to the PSR. Docs. 1112, 1115, 1120. The United States responded to both filings and incorporates its responses herein. Docs. 1124, 1125. On the same day, Hujrah and Subhanah also filed sentencing memoranda. Docs. 1114, 1116. Hujrah requests that the Court sentence her to "something significantly less" than life imprisonment," Doc. 1116 at 7, and Subhanah requests that the Court "decline to impose a life sentence and instead sentence her to a period of incarceration commensurate with her extremely limited role in this case," Doc. 1114 at 4.

For the reasons stated in the United States' Response to the Joint Objections to Life Sentence (Doc. 1124), the Court must impose a sentence of life imprisonment for both Hujrah and Subhanah. A sentence of life imprisonment is appropriate in this case given the involvement of both Hujrah and Subhanah in the kidnapping of Abdul Ghani, a kidnapping that foreseeably led to his death, and the subsequent efforts to conceal his kidnapping and death from family and authorities. Although Hujrah and Subhanah face mandatory sentences, the United States briefly addresses the 18 U.S.C. § 3553(a) factors as follows:

## II.   ARGUMENT

### A.   18 U.S.C. § 3553(a) Factors

Section 3553(a) continues to require sentencing judges to take certain factors, including "the kinds of sentence and the sentencing range established" by the Guidelines, into account when imposing a sentence. 18 U.S.C. § 3553(a)(4). Taking into account the provisions of 18 U.S.C. § 3553(a), a reasonable sentence is one that "reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence to criminal conduct"

2

and "protect[s] the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(2)(B), (C); *see also United States v. Booker*, 543 U.S. 220 (2005). A reasonable sentence also is one that "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id*. Based on these factors, a sentence of life imprisonment is not only mandated, but appropriate for these Defendants.

        1.        The Nature and Circumstances of the Offense

Congress has demonstrated that it views the crimes of kidnapping resulting in death and conspiracy to do the same as serious by imposing a mandatory sentence of life imprisonment for those convicted of these crimes. *See* 18 U.S.C. § 1201. Although Hujrah and Subhanah attempt to portray themselves as victims who were powerless to intervene when Abdul Ghani was kidnapped from Hakima Ramzi (Hakima), deprived of his necessary medication, and subjected to hours of ruqyahs, the evidence shows otherwise. The evidence shows that Hujrah and Subhanah were willing participants in Abdul Ghani's abduction and that they stood idly by while he suffered and cried. The evidence also shows that when Abdul Ghani died, rather than trying to save his life and alerting Hakima and the authorities, Hujrah and Subhanah worked in concert with their co-defendants to conceal the fact of Abdul Ghani's death and to instead collectively use Abdul Ghani's body as the central prop in their preparations for a future war against law enforcement and corrupt institutions.

The Court is certainly familiar with the facts of this case, but it is worth highlighting some of the actions Hujrah and Subhanah took that helped effectuate the kidnapping and concealment of Abdul Ghani:

- Multiple witnesses testified that Hujrah and Subhanah knew of Abdul Ghani's medical condition and that he needed medication. Tr. 92-93, 195, 281.

- In October 2017, Hujrah traveled to the United Kingdom to learn how to perform ruqyah to remove evil spirits from the body.   Tr. 100, 102.

- Multiple witnesses testified that in about October 2017, Hujrah and others began accusing Hakima of practicing black magic.   Tr. 101, 103.   Hujrah accused Hakima of practicing black magic on Abdul Ghani, and she believed it was necessary to perform ruqyah on him to exorcise the evil spirits.   Tr. 102-103, 217-218, 334; 809-10; 578:20-580:3; Gov't Ex. 12 at 6.

- On November 27, 2017, Siraj Wahhaj (Siraj) and Hujrah went to the motel room where Hakima was living to accuse her of practicing black magic and of harming Abdul Ghani with it and to tell her that Allah would destroy her if she did not repent, and shortly after this Siraj absconded with Abdul Ghani.   Tr. 109-110.

- Hujrah and Subhanah's brother Muhammed had a meeting at his house with Siraj, Jany Leveille (Jany), and Hujrah to convince them to return Abdul Ghani to Hakima, but Abdul Ghani was not returned to Hakima.   Tr. 123.

- Thereafter Muhammed and Hakima called the police and tried to find Abdul Ghani at Siraj's house, but no one was there.   Tr. 128-129.

- Muhammed and Hakima discovered that Siraj, Jany, and the children were at Hujrah's house, so they called the police again, and an officer responded and tried, to no avail, to get Siraj to surrender Abdul Ghani to Hakima.   Tr. 130.   Abdul Ghani started to cry.   Tr. 131-132.

- A few days after Siraj took Abdul Ghani, they went and stayed at Hujrah's home for a short time, and a police officer came. Tr. 344-345, 491. After the police officer left, the adults, including Hujrah and Subhanah, spoke together and then told the children they all had to leave Georgia.   Tr. 344-346, 491.   They rushed to leave Georgia, gathered only took a few belongings, and left at night.   Tr. 346-348; Gov't Ex. 12 at 21.

- Thereafter the entire Wahhaj family and others tried to reach Siraj, Jany, Hujrah, and Subhanah to get Abdul Ghani back to Hakima. Tr. 133, 135-136.

- The family also made fliers and posted messages on Facebook where Subhanah and Hujrah could see them to try to get Abdul Ghani back; the messages made clear that Abdul Ghani was in danger without his medication.   Tr. 136, Gov't Ex. 5.

- The family explained to Subhanah and Hujrah that they were concerned because Abdul Ghani needed medicine, but none of the defendants responded to the messages. Tr. 137-138.

4

- Jamella Jihad, Abdul Ghani's step-grandmother, sent Facebook messages to Subhanah, beginning on December 7, 2017, in an attempt to get Abdul Ghani back to Hakima, but Subhanah did not respond.   Tr. 234, 235, 238-239; Gov't Ex. 10C.

- On December 9, 2017, Jamella wrote an email to Siraj, Jany, Hujrah, and Subhanah, trying to persuade them to return Abdul Ghani.   Tr. 240-242; Gov't Ex. 10A.

- Hujrah and Subhanah's sister Sharifa wrote messages, making clear that they were playing with Abdul Ghani's life by taking him away from his mother, from his primary caregiver, and by depriving him of his necessary prescription medication. Gov't Exs. 20-25.

- Subhanah wrote messages on Facebook in which she accused Jamella of spreading lies and deception. Tr. 244; Gov't Ex. 22.

- Siraj performed ruqyah on Abdul Ghani every day starting when Siraj and Jany took Abdul Ghani from Hakima and continuing after the group lived in close quarters in New Mexico.   Tr. 586:19-587:4; 591:22-592:2.

- Siraj did ruqyahs on Abdul Ghani because Siraj and everyone living at the compound believed Abdul Ghani had jinns, which are the devil or evil spirits, in his body.   Tr. 824.   Siraj did the ruqyahs in the trailer, and everyone knew about it.   Tr. 825. Abdul Ghani would be laying down.   Tr. 827.   Abdul Ghani would kick and cry during the ruqyahs, and Siraj would hold him with more force so he could not kick. Tr. 826-827, 858.   No one objected to the recitations.   Tr. 829.

- Everyone knew about the ruqyah sessions, but no one tried to stop it and Hujrah complained he was too loud. Tr. 362, 552.

- Abdul Ghani was not given his medicine in New Mexico, and he was less lively than he had been in Georgia.   Tr. 822.

- Abdul Ghani passed away in the trailer during a ruqyah session, and he was lying down, crying and foaming at the mouth before he died, and Siraj's hand was on his jugular vein on his neck.   Tr. 363, 367-369, 385; Gov't Ex. 12 at 28. Siraj had said ruqyah worked better if he put his hands on the jugular vein.   Tr. 372-373, 382; 606-23, 607:7.

- No one called for help or gave Abdul Ghani medicine when he stopped breathing, and the adults did not seem very surprised.   Tr. 374-374; 609:20-23; Gov't Ex. 12 at 29.

- Jany responded to Abdul Ghani's death by panicking, and Hujrah said God would handle everything.   Tr. 609:24-610:10.   Other than Jany, nobody seemed panicked

5

or concerned in any way about Abdul Ghani's death. Tr. 610:15-20.

- Everyone said it was fine that he died because he would come back as Isa, but the children were told to not talk about it. Tr. 830, 832.

- When Abdul Ghani resurrected, they were to go to the world to tell the truth, and they were to prepare for war because those who did not believe would be killed. Tr. 833. Siraj, Lucas Morton (Lucas), Farroll, and Jamil would fight in the war and practiced shooting. Tr. 833-834.

- Everyone living at the compound prepared to go to war against non-believers, and they said they would kill the police and FBI if they came to the compound. Tr. 837-838.

- After Abdul Ghani died, his body was wrapped in plastic and kept under Hujrah's bed in the trailer. Tr. 384. It was brought out to be washed, and Farroll was forced to wash it. Tr. 384-385. Jamil helped was the body once, and the body was later moved to a tunnel. Tr. 386.

- Subhanah was pregnant when they lived at the compound, and there was talk that her baby would be the resurrected or reincarnated Abdul Ghani. Tr. 536.

- Jany wrote a book about the journey the group had and what was to come, as well as rules that were to be followed, and the book was intended to be read by others. Tr. 305-309; Exhibit 12. Subhanah helped with the book. Tr. 306.

- Siraj, Hujrah, and Subhanah were aware that Jany was writing a book; all the defendants knew about the book. Tr. 582-584. Subhanah helped Jany edit the book. *Id*. Jany's book included a record of everything that happened as well as a set of rules the defendants knew about and tried to follow. Tr. 584:23-585:22.

The actions of both Hujrah and Subhanah in the kidnapping and concealment of their nephew Abdul Ghani, both before and after his death, are inexcusable. Hujrah was a willing participant from the very beginning, when she accused Hakima of practicing black magic, attended the meeting at Muhammed's house when Muhammed tried to have Abdul Ghani returned to Hakima, and when the police officer went to Hujrah's home in an attempt to return Abdul Ghani to Hakima. Subhanah, starting in December 2017 and continuing in July 2018, served as the group's mouthpiece, was deceitful and accusatory, and lied to her own family, the very people she

y

knew were justifiably concerned about Abdul Ghani's welfare. Hujrah and Subhanah deserve life sentences for the roles they played in the kidnapping and foreseeable death of their young nephew.

2. History and Characteristics of the Defendant

Hujrah, who is 43 years old, and Subhanah, who is 40 years old, attempt to portray themselves as helpless, submissive women, but this is far from the truth. Both women attended college and have meaningful employment experience. Docs. 1096 at ¶¶ 65-66; 1098 at ¶¶ 63-64; 1114 at 1-2. Importantly, the many communications from and with their family that were entered into evidence—including communications from their mother, sisters, and stepmother—confirm that the Wahhaj family did not consider Hujrah and Subhanah to be under coercive control and submissive to Siraj and Lucas, but instead the family fully and reasonably expected both Hujrah and Subhanah to do the right thing and return Abdul Ghani to his mother. *See, e.g.,* Trial Exhibits 10A, 10B, 10C, 20, 20A, 21, and 22. Hujrah and Subhanah chose to follow and join forces with Siraj and Jany, and their actions directly supported the kidnapping and concealment of Abdul Ghani.

Hujrah and Subhanah, in an attempt to receive lesser sentences, point to the fact that they themselves are mothers. However, Hujrah and Subhanah, who no longer have any parental rights, subjected their own young children to despicable, dangerous, unstable, and unsanitary conditions for a period of months as all five Defendants concealed Abdul Ghani—both when he was alive and after he died—and prepared for his resurrection. If anyone was under coercive control, it was the children who had no choice and no ability to escape the horrors of the compound. There is simply no excuse for the awful way all twelve children, including Hujrah's and Subhanah's children, were forced to live.

      3.      <u>The Need for the Sentence Imposed to Promote Respect for the Law, Provide Just Punishment, Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant</u>

It goes without saying that kidnapping resulting in death and conspiring to do the same, especially when the victim is a helpless, special needs three-year-old boy, is precisely the type of crime that warrants a sentence of life imprisonment. Such a sentence will promote respect for the law, provide just punishment and adequate deterrence, and protect the public.

      4.      <u>The Need to Avoid Unwarranted Sentencing Disparities Between Defendants Who Have Committed Similar Crimes</u>

Every defendant who comes before the Court has a unique life, characteristics, circumstances, and criminal history which help the Court mold a suitable sentence for the particular defendant. In this case, a sentence of life imprisonment satisfies the sentencing goals and ensures against disparities among similarly situated defendants. A lesser sentence, as Hujrah and Subhanah request, would not only result in an unwarranted sentencing disparity but would also constitute an illegal sentence.

### III. <u>CONCLUSION</u>

WHEREFORE, the United States respectfully requests that this Court impose sentences of life imprisonment for Defendants Hujrah and Subhanah Wahhaj.

      Respectfully submitted,

      ALEXANDER M.M. UBALLEZ
      United States Attorney

      */s/ Electronically filed*
      KIMBERLY A. BRAWLEY and
      TAVO HALL
      Assistant United States Attorneys
      P.O. Box 607
      Albuquerque, NM   87103

(505) 346-7274

*/s/ Electronically filed*
GEORGE C. KRAEHE
JESSICA JOYCE
Trial Attorneys
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC   20530

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to defense counsel, and separate copies have been mailed to Defendants Siraj Wahhaj and Lucas Morton.

*/S/ Electronically filed*
KIMBERLY A. BRAWLEY
Assistant United States Attorney

9