IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 18-2945-WJ |
| ) | |
| ) | |
| SIRAJ IBN WAHHAJ, ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States submits its sentencing memorandum and requests that the Court sentence Defendant Siraj Ibn Wahhaj (Siraj) to a term of life imprisonment. The United States does not object to the offense conduct or the calculations in the presentence report (PSR) and notes that Siraj's calculated guideline imprisonment range is life imprisonment. Doc. 1094 at ¶¶ 74-75. He, unlike his co-defendants Lucas Morton (Lucas), Hujrah Wahhaj (Hujrah), and Subhanah Wahhaj (Subhanah), does not face a mandatory sentence of life imprisonment, but he certainly deserves a life sentence given the seriousness of the offenses, his aggravating role in the offenses, and to avoid unwarranted sentencing disparities.

## BACKGROUND

The facts of this case are unusual, complicated, and well known to this Court. That said, at its core, sentencing in this case is about the primary role both Siraj and Jany Leveille (Jany) played in a conspiracy to kill federal officers or employees. This conspiracy revolved around Siraj's handicapped three-year-old son Abdul Ghani, whom Siraj, Jany, Hujrah, Subhanah, and Lucas kidnapped and later used as a prop in a plan to rid the world of purportedly corrupt institutions, including the FBI, CIA, and U.S. military, and to kill those who did not convert and

follow the group's unique beliefs.    In preparation to carry out this plan, Siraj followed Jany's prophecies and conducted extensive firearms and tactical training for Lucas and Jany's two teenaged sons, training intended to prepare them for the coming "war" and cleansing of society's corrupt institutions.    The planning and training for this conspiracy took place at a heavily fortified, purpose-built, militarized compound in Costilla Meadows, New Mexico, about one mile from the Colorado border.

The United States initiated this case by complaint filed on August 31, 2018, charging Siraj and his four co-defendants with a violation of 18 U.S.C. § 371, conspiracy to provide firearms to a person unlawfully in the United States, and 18 U.S.C. § 922(g)(5) and § 2, illegal possession of a firearm by a person unlawfully in the United States and aiding and abetting. Doc. 1.   This was followed by an indictment charging the same offenses, filed on September 11, 2018.   Doc. 25.   The Defendants were arrested on August 31, 2018, and first appeared before a judicial officer of this Court on September 4, 2018.   Doc. 13.

On March 13, 2019, the Grand Jury returned a seven-count superseding indictment against all five Defendants, alleging violations of 18 U.S.C. §§ 371 (Conspiracy to Commit an Offense Against the United States), 922(g)(5) (Possession of Firearms by a Person Unlawfully in the United States), 1117 (Conspiracy to Murder an Officer or Employee of the United States), 1201 (Kidnapping), 2339A (Providing Material Support to Terrorists), and 2339A (Conspiracy to Provide Material Support to Terrorists).   Doc. 85.

Although Jany entered a guilty plea, Siraj and the remaining co-defendants rejected plea offers made to each of them (*see* Docs. 652, 653, 654, 669) and proceeded to trial.    On October 17, 2023, after three weeks of trial, a jury returned guilty verdicts on most of the charges in the Superseding Indictment.   See Docs. 1010, 1011, 1014, 1016.    Siraj was convicted of every

charge brought against him: Conspiracy to Provide Material Support to Terrorists, Providing Material Support to Terrorists, and Conspiracy to Murder an Officer or Employee of the United States. Doc. 1010. Siraj was the only one of the five defendants who was not charged with kidnapping crimes, and he was not charged simply because, under federal law, he would have had an affirmative defense because the kidnapped victim was his son. *See* 18 U.S.C. § 1201. The fact that Siraj was not charged with any kidnapping crimes, however, in no way diminishes his culpability and the egregious role he played in Abdul Ghani's kidnapping, eventual death, and the subsequent events.

On January 31, 2024, the United States Probation Office filed a PSR for Siraj. Doc. 1094. The PSR, after applying a 4-level enhancement for Siraj's role as a leader or organizer of the criminal activity, calculates his total offense level as 43 and his criminal history category as VI, thus resulting in a guideline imprisonment range of life in prison. *Id.* at ¶¶ 40, 74-75. It is worth noting that the author of the PSR did not find any factors that would warrant a departure from the applicable guideline imprisonment range. *Id*. at ¶ 91. The United States requests a sentence of life imprisonment.

## **DISCUSSION**

Section 3553(a) requires sentencing judges to take certain factors, including "the kinds of sentence and the sentencing range established" by the Guidelines, into account when imposing a sentence. 18 U.S.C. § 3553(a)(4). Taking into account the provisions of 18 U.S.C. § 3553(a), a reasonable sentence is one that "reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence to criminal conduct" and "protect[s] the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(2)(B), (C); *see also United States v. Booker*, 543 U.S. 220 (2005). A reasonable sentence also is one that

"avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id*. Based on these factors, a sentence of life imprisonment is sufficient but not greater than necessary for Siraj as it takes into account not only the extremely serious nature of the offenses for which he was convicted, but also avoids unwarranted sentencing disparities, particularly given that three of Siraj's co-defendants, who did not receive a four-level role adjustment as he did, will receive life mandatory sentences.

    A. **The nature and circumstances of the offense, and the seriousness of the offense, warrant the requested sentence.**

The United States emphasizes the seriousness and extremely dangerous nature and circumstances of Siraj's offenses. As an initial matter, the U.S. Sentencing Guidelines themselves demonstrate the seriousness of the offenses to which Siraj was convicted as the Guidelines call for a sentence of life in prison. Doc. 1094 at ¶¶ 74-75. Although Siraj's total offense level is 43, it is worth noting that it would have been 51, a full eight levels higher, given the enhancements he properly received for promoting a crime of terrorism, being an organizer or leader, and for using minors to help commit his offenses, but the Guidelines cap is 43. *Id*. at ¶¶ 37-46.

It is difficult to overstate the seriousness of the offenses in this case. Siraj went to the motel room where he had arranged for his wife, Hakima Ramzi (Hakima) to stay with Abdul Ghani and, when Hakima got into the shower, he lied to her and said he was taking Abdul Ghani to a park. Siraj had no intention of taking Abdul Ghani to a park, but instead had every intention of permanently keeping Abdul Ghani from Hakima, the mother and primary caregiver who deeply loved her son and tended to his needs. Knowing Hakima was desperate to get Abdul Ghani back, Siraj rebuffed attempts by his own family, the police, and child protective

services, and he went so far as to threaten Hakima that, because she involved the police, she would see what happens next.    From there, Siraj and the others fled Georgia with Abdul Ghani and 11 of their other children, first to Alabama, and then to New Mexico.    Throughout this entire time, Siraj subjected Abdul Ghani to hours of daily ruqyahs, or exorcisms, and never gave the small child the medication he desperately needed.    Abdul Ghani's tragic death, occurring several weeks after the kidnapping, was foreseeable.

   Abdul Ghani's death did not make Siraj, Jany, and their co-defendants reconsider their actions, but instead gave them an opportunity to use Abdul Ghani's body as a prop in their end-of-times fantasies.    Starting even before Abdul Ghani died, Siraj, along with his coconspirators, built a militarized compound (on land they were quickly informed that they did not own or have any legal right to occupy) in Amalia, New Mexico, for the mutually supportive purposes of (1) training for what they expected to be a war between themselves and those who joined them in following Jany as the reincarnation of Mary, mother of Jesus, and those who rejected Jany and her followers, and (2) providing a safe haven within which Jany and her coconspirators could hide from law enforcement with Abdul Ghani and from which they could engage and kill federal law enforcement officers who came to arrest them.    After Abdul Ghani died at the compound, Siraj and his co-defendants remained at the compound with his body while they awaited Abdul Ghani's resurrection and leadership of the group in their planned societal-cleansing war.

   In anticipation of the war they were planning to initiate, Siraj and his co-defendants provided material support in the form of weapons, training, personnel, and finances.    Jany authored a book, with assistance from Hujrah and Subhanah, explaining what she and the co-defendants were doing, what they were planning, and why.    The book was meant to be a manifesto or a testament that the group would use to announce themselves and convert people to

5

their cause, but the book also warned about what would happen to those who did not convert or join the group, and all of the defendants knew about the book. *See* Gov. Trial Ex. 11 (Jany Leveille's Book). Siraj's actions were in line with Jany's prophesies, and he was more than an eager participant—he was a leader and effectuated the firearms and tactical training. Indeed, Siraj's actions and those of his co-defendants were not the actions of people who were simply trying to get away from who they believed was a horrible, black-magic conjuring, baby-stealing Hakima to live peacefully off the land in Amalia.

Jany may have been the spiritual and ideological leader of the group, but Siraj played an equally important leadership role and was instrumental in the design of the militarized compound built by the group in New Mexico as well as the weapons and tactical training he conducted for the "Army" that would help carry out the attacks on nonbelievers and members of corrupt institutions, to include federal officers and employees. Siraj not only knew that the group's plan was to shoot law enforcement officers if they ever came to the compound, but he armed himself and instructed one of Jany's sons to do likewise the day officers did come to the compound to check on the welfare of the many children living there—August 3, 2018. On that occasion, Siraj armed himself with multiple firearms, intending and prepared to engage in a shootout with law enforcement. Fortunately, Jany ordered him to stand down, and a violent confrontation was narrowly avoided.

The intensive effort exerted into making the compound a hardened, militarized safe haven underscores the seriousness with which Siraj and the group took their collective plans and mission. Instead of making the compound a comfortable or safe space for the many small children who had to live there for many months, the Defendants hand-dug a 100-foot escape tunnel and spider-hole with weapons staged at the end, built numerous fortified firing positions,

switchback entries with "kill box" false corridors in surrounding walls, and a full-sized tactical training range, on which the group could train and plan for its coming war. Siraj concealed Abdul Ghani's death and whereabouts and looked forward to the group's societal reckoning. *See, e.g.*, Gov. Trial Exs. 11, 93, 94. The Court will recall that after Abdul Ghani died, Jany convinced the rest of the group that he was going to resurrect on Easter, which was April 1, 2018, and that he would lead the group to face society and kill those who did not join them. In response, Siraj's firearms and tactical training for Lucas and Jany's boys ramped up in frequency, intensity, and complexity in anticipation of the Easter resurrection. *See* Gov. Tr. Exs. 81, 82. Finally, after Abdul Ghani did not resurrect on Easter, Jany began to talk about him returning around the time of his birthday or, chillingly, as Subhanah Wahhaj's soon-to-be born child. *See* Gov. Trial Ex. 85 at 21; Tr. at 536–37.

The harsh living conditions at the compound also speak volumes about the seriousness of Siraj's offenses. This includes the dangerous and unsanitary conditions to which the group subjected their 12 children (11 after Abdul Ghani's death) for approximately nine months, approximately four of which most of the children spent entirely underground in the tarp-covered trailer that they referred to as "the hole." *See, e.g.*, Trial Transcript ("Tr.") at 407–08.

Thankfully, Siraj and the rest of the group were taken away from the compound by well-prepared law enforcement and arrested before their plans could be realized.

B. **Defendant's history and characteristics warrant the requested sentence.**

Siraj, who is 45 years old, was born and raised in New York, earned a GED, and has worked a variety of jobs. Doc. 1096 at ¶¶ 58, 60, 69-71. He was legally married to Hakima, who was from Morocco, when he began a relationship with Jany, and he had one child, Abdul Ghani, with Hakima and four children with Jany. *Id*. at ¶¶ 64-65. Siraj's surviving children

are now being raised by his mother in New York, and he has no parental rights to any of his children.

After Siraj was living with Jany, a Haitian national who was illegally in the United States and who had repeatedly been denied adjusted or permanent visa status, he moved Hakima from Morocco to Georgia.   Hakima, as Siraj's lawful wife, had legal status, and her presence foreclosed any opportunity for Jany to get legal status in this country as Siraj's wife.   Video evidence found on electronic devices at the compound also shows that Siraj had visited Haiti in the months just before the offense conduct in this case and was looking at purchasing property and moving there—something that Jany had expressed to others that she did not want to do. There was obvious and understandable tension between Hakima and Jany, yet Siraj would sometimes have both women live with him simultaneously.   At other times, he had Hakima live with his sisters Hujrah and Subhanah or in a motel room.   When Siraj and Jany took Abdul Ghani from Hakima, they removed the last link between them and Hakima, who predictably sought a divorce from Siraj.

Siraj knew that Hakima was desperate to get her son back and was involving the police and the court, hence he and the others fled first to Georgia and then to New Mexico.   Siraj and the others completely disappeared from the rest of the Wahhaj family and all other family and friends who might try to stop the group's plans and preparations.

Siraj's actions when the group was traveling, under cover of night, from Alabama to New Mexico are very telling about the type of person he is.   Siraj crashed the vehicle that was transporting himself, Jany, and their collective seven children, and while interacting with police, Siraj lied and showed more concern for his firearms than he did for Abdul Ghani and Jany's eldest son, who were shivering on the side of the interstate.   Siraj lied about basic biographical

and contact information and about the number of people in the car. He refused to let the boys sit in the police officer's car where they would be warm and safe. He was utterly fixated on his firearms and getting them into the back of Lucas's box truck.

Siraj's actions from the day he took Abdul Ghani from Hakima through the day he was arrested by police confirm he was instrumental in his son's death and in the very real plans and preparations to murder federal officers and employees. A sentence of life imprisonment is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553.

C. **The requested sentence promotes respect for the law.**

Siraj was one of the leaders of the group that elevated its own religious beliefs and practices over the secular law of the United States. The group did so expressly. They practiced these beliefs and followed their own rules at their compound in New Mexico. They separated Abdul Ghani from his mother, deprived him of his necessary anti-seizure medication and subjected him to hours of painful and distressing exorcism rituals on a daily basis, all resulting in Abdul Ghani's death, less than a month after his abduction, on a cold, barren patch of dirt in New Mexico, thousands of miles from the only caregiver he had ever known. The group's beliefs and practices were used to justify not only their plans and preparations to kill officers and employees of the United States, to include FBI, CIA, and military members, but also to start a war against the non-believers and (in their minds) literally replace the national and international governmental and societal status quo with their own version of society, adhering to their unique religious beliefs and practices with Leveille as the spiritual leader. All of this was to be at gunpoint, for which Siraj conducted extensive training. Thus, Siraj's lack of respect for the law of the United States was close to non-existent.

Even at trial, Siraj and his co-defendants continued to flaunt their utter lack of regard for

the law.    In their own telling, the group went along with Jany's claim that three-year-old Abdul Ghani was actually her child stolen from her womb.    As such, the co-defendants indignantly claimed it was acceptable to disregard any and all state and federal laws in taking Abdul Ghani away from his custodial, caregiving mother, absconding across multiple state lines, and hiding out in a tarp-covered hole in the remote New Mexico sagebrush well after Abdul Ghani's death at their hands.    In pursuit of their plans and preparations to kill federal officers and employees, the group attempted to recruit others to their cause, withheld medication from Abdul Ghani and took no action to save his life as he died in front of their eyes, and did not report to anyone—family, friends, or law enforcement—Abdul Ghani's death or the location of his body, even after law enforcement entered their compound looking for him.

A sentence of life imprisonment will send a very real, important, and needed message that the United States is a country of laws, and the rule of law must be respected by all who live here.    The requested sentence will indeed promote a respect for the law to Siraj specifically, as well as those who become aware of the sentence.

    **D.  The requested sentence serves to deter further criminal conduct.**

As discussed above, Siraj did not feel deterred by the law in the nine-month string of criminal conduct leading to this case.    To date, he has not shown remorse nor accepted any responsibility for his deplorable conduct.    A sentence of life imprisonment is appropriate and sufficient, but not greater than necessary, to accomplish this sentencing goal.

    **E.  The requested sentence will avoid unwarranted disparities.**

The calculated imprisonment range under the applicable guideline for Siraj's offenses is life.    As stated herein, Siraj is not facing a mandatory life sentence because he was not charged with and convicted of the kidnapping resulting in death offenses, but it would be a grave

injustice, given his aggravating role in these offenses, if he receives a lesser sentence than Hujrah, Subhanah, and Lucas, who must be sentenced to life imprisonment. A sentence of life imprisonment will directly and actually avoid unwarranted disparities.

### F. The requested sentence provides just punishment and protects the public from further crimes of the Defendant

As discussed above, there are several aggravating factors to Siraj's offenses here, and no mitigating factors other than his lack of prior criminal history. Siraj has proven to be a serious risk to even his own family, and the public should be protected against any further crimes from him. A sentence of life imprisonment will adequately protect the public.

## CONCLUSION

The United States requests that the Court sentence Defendant Siraj Ibn Wahhaj to a term of life imprisonment.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*/s/ Electronically Filed*
KIMBERLY A. BRAWLEY and
TAVO HALL
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

*/s/ Electronically Filed*
GEORGE C. KRAEHE and
JESSICA JOYCE
Trial Attorneys
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

I HEREBY CERTIFY that I filed the
foregoing pleading electronically through
the CM/ECF system, which caused counsel
of record for defendants to be served by
electronic means. A copy will also be mailed
to Defendants Siraj Wahhaj and Lucas Morton.

***Filed Electronically***
KIMBERLY A. BRAWLEY
Assistant U.S. Attorney