FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 04 2024

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.       No. 1:18-CR-02945-WJ

LUCAS MORTON,

    Defendant.

## DEFENDANT LUCAS MORTON'S PRESENTENCE REPORT OBJECTIONS, AND JOINDER WITH DEFENDANTS' OBJECTIONS TO LIFE SENTENCE [Doc 1112]

Defendant Lucas Morton (DEFENDANT) respectfully submits these objections to the Presentence Report (PSR), as well as notifies the Court and all parties of his joinder in *Defendants Subhanah and Hujrah Objection to Life Sentence,* filed by Defendant Subhanah Wahhaj and Defendant Hujrah Wahhaj [Doc 1112]. In support of this Joinder, DEFENDANT STATES:

DEFENDANT fully adopts the argument and request(s) contained therein. However, there are some instances where DEFENDANT'S adoption does not apply to him such as those pertaining to crossing of state-lines. In this vein DEFENDANT asserts that knowledge/intention of what the government alleged was the reasoning beyond the action committed, has not been proven to have reached DEFENDANT. This aspect will be covered in his PSR objections as follows:

DEFENDANT objects to Identifying Data as he has never went by/under the alias:

Alias(es):    Also Known As: Stick, Lucas
                 Also Known As: Morton, Stick

This alias was placed in DEFENDANT'S criminal history by local law enforcement in Suffolk County, NY who mistaken DEFENDANT for a "person of interest", and must be removed for fear of mischaracterization.

6. DEFENDANT objects to the mischaracterization of being called a terrorist due to the fact that he is a practitioner of Islam who supports the right to bear arms and exercise his Faith without Government interruption by the most restrictive means as it has done in this wrongful conviction of allegedly providing material support to terrorists. No knowledge of this was presented at trial that Lucas knowingly provided material support knowing that it was intended for an alleged preparation of armed attacks against the government, educational, and financial institutions. No evidence was presented that Lucas conspired with Siraj to murder federal officers, particularly FBI agents.

7. DEFENDANT objects to the misinterpretation of facts in this case as the accusations against Hakima Ramzi, of practicing "black magic", did not come until after he was told by the Raqi in England that two women have put "spells" on Siraj and Hujrah both. BN#724 States, before Siraj went missing he accused Hakima of practicing "black magic." Not between Siraj's trip to Mecca and England. Hakima an Arabic native translated Ruqya as a protection as was not aware of it being translated as a "blessing" or "exorcism" at trial. Jamil Louise-Jacques testified that Siraj and Hujrah went to get relief from spells placed on them in England, not to learn how to perform a "ruqyah". Jany's Book never claimed that she was Moses nor any other prophet and thus must be omitted along with the other inconsistent facts in this case aforementioned at #7. It is further noted/added that these recorded writings did not direct any physical violence towards anyone, and rather read that ALLAH would Punish any who did wrong in this affair of the Defendants who are only warners. BN# 167, 211

Jany being considered unlawfully in the United States is clarified by her immigration history requested by FBI and local law enforcement charged with her arrest. This statement must be omitted, per ICE policy she would have been considered unlawful on and after June 29, 2018 when her application for permanent residency was denied.

8. Nowhere is evidence did anyone specify which park Siraj purportedly said he took his son to, and and this speculation must be omitted.

No evidence of any medication physically being left behind was ever documented outside of Hakima's word which at trial proved to be false in several instances, and thus must be omitted for lack of

corroboration. Notably, eyewitness accounts of not seeing Abdul-Ghani take medication is not corroboration that he did not take it when eyewitnesses were not present. Without physical proof and no toxicology report saying that he did not have his medication in his system, it is unclear where said medication ended up and must be omitted from being "left behind".

9. Hakima's trial opining of how many types of Ruqyah exist must be omitted because she is not an expert, and her testimony on the topic suggests that she was told to say this. The ruqyah performed on Siraj and Hujrah was not physical in nature, and this can be corroborated by the videos said Raqi has on the internet on his sessions of Ruqya. Had DEFENDANT had competent legal assistance he would have offered the videos for this discussion. However, there are no interviews of Hakima ever mentioning anything pertaining to Ruqyah except Siraj performing it one time on Abdul-Ghani in which she could not remember if Siraj had a hand on his head or not. All she noted was that he cried from/after the event took place. Hakima has no history nor knowledge of this "aggressive", "professional grabbing", and DEFENDANT moves this Court for the opportunity to question her pursuant to Rules of Criminal Procedure 32(i)(2). No evidence of this exists in this case and is a mischaracterization of ruqyah and of the facts.

10. Jany per her book said that she did not return him as intended because he was not cured of his ailments, not because she believed it was her child and thus had the right to custody of him. BN#185 Again, Jany's record of beliefs state that after an attempt on her and her family's lives were diverted, Siraj advised that they seek refuge on his property in Alabama where DEFENDANT was already residing with his family on unrelated/preexisting plans to do so. BN#188

11. This alleged threat of Siraj to Hakima would have logistically happened in front of the police officer who would have had to document it in which there exists naught. Subsequently this uncorroborated allegation must be omitted as no evidence exists to support such a blatant threat in the presence of law enforcement as this was the last time Hakima saw and heard from Siraj and Abdul-Ghani. Existing evidence contradicts minor children testified accounts, as does Jany's journal of beliefs which puts "the meeting" of DEFENDANTS the day before, which prompted their timely escape as

Hakima showed up whilst the group was already in the swing of vacating their residences for good. This misconception either must be corrected or omitted.

12. After the noting of Siraj's personal firearms and accompanying accessories it must be noted that Siraj informed the corporal that he was an executive protector(body guard) and it was customary for him to travel with his equipment, as to not alarm the law enforcement officers eyeing his arsenal. The statements of Jany and Siraj did not contradict one another as they both gave accurate accounts from their personal perspective, and so this closing statement on #12 corrected or omitted. Namely, Siraj said, "my wife", and Jany said they were not married by law because their marriage was Islamic/religious only. Siraj also said, "to go camping in New Mexico"; where Jany said, "to see her step-brother's property in New Mexico". Which are both perceptions of the truth as both had eventually happened.

13. Must be corrected to say that, "However, two days later, the corporal learned of a "be on the lookout"… not several as this is an inaccurate account; see BN#22416 exhibit

14. Must say, "Due to the car accident and car troubles with Hujrah's vehicle Jany and Siraj, were now accompanied by Hujrah; Subhanah; Lucas; and their combined 11 children ranging in age from approximately 1 to 15 years, who traveled with Abdul-Ghani, where initially the families embarked on this journey from Alabama to a rural town called Amalia in northern New Mexico; in separate vehicles, arriving no later than December 16, 2017" instead of "Thereafter". Nexrt it must say, "During the entire time in New Mexico, minor children eyewitnesses reported that they did not see Abdul-Ghani receive any medication and underwent a succession of spiritual healing sessions performed by Siraj as advised by Jany." Instead of "they deprived Abdul-Ghani of his necessary anti-seizure medication and subjected…" as this is highly prejudicial as Abdul-Ghani was not DEFENDANT'S responsibility nor was there any evidence presented that DEFENDANT was aware of these specifics to include: medical condition/history of Abdul-Ghani, nor any medication he may have required/taken/not taken; nor was evidence presented that DEFENDANT was aware of any spiritual healing that had been performed on

Abdul-Ghani at the advice of Jany by Siraj. There were no transactions by Siraj that reflected the building and construction supplies to fortify the compound and this speculation must be omitted.

15. Must say, "there was a small partially buried camper, where it appeared that some of the children may have slept, and a tunnel; all of which were partially surrounded by a wall of tires;...instead of, "there was a partially buried camper and a tunnel, where it appeared the children may have slept," No factual evidence was presented that Hujrah and Subhanah actually edited Jany's journal, the minor children merely speculated to this though were not sure it they had done so or not, hence this must be omitted. The last line in #15 must be omitted as Jany's immigration history was elicited by the FBI/local lawenforcement who knew or should have known that Jany was considered to be lawfully in the United States until June 29, 2018 when her application for permanent residency was denied, and she had missed two appointments to facilitate that process. See exhibit of said immigration history.

16. Must say, "According to the Government, Subhanah was the mouthpiece for the group and responded to a handful of messages urging some defendants; excluding Lucas, to return Abdul-Ghani." as there were no messages presented at trial that were ever sent to Lucas in this regard. Nor did Lucas ever "acknowledge someone responded from Subhanah's cellphone on several occasions", and thus this must be omitted.

17. Must say, "On January 9, 2018, the Clayton County Juvenile Court issued an adult warrant for Siraj's arrest under the same docket number listed above, indicating Siraj allegedly made it known before "absconding" that he wanted to perform an exorcism on Abdul-Ghani, because he believed Abdul-Ghani was possessed by the devil." This allegation is unsupported and thus it is hearsay initiated by Siraj's step-mother Jamella Jihad. "Felony warrant" must be omitted as this court warrant in this PSR Objections' Exhibits never states "felony; only states "adult".

18. Must omit the phrase, "probably from a seizure;" as the cause of Abdul-Ghani death since no evidence was presented on his cause of death merely expert opinions of probabilities and conjecture while not being able to substantially support this theory of death by a seizure or cardiac arrest due to spiritual healing known as ruqyah. Next it must say that, "It was expertly opined at trial that had Abdul-

Ghani received his medication, his life expectancy would have been well into adulthood", and not established dueto the fact that in Defendants established Faith of Islam this phrase is blasphemous as each individual human being has its appointed term for death which cannot be advanced nor delayed. See exhibits that follow. It must say Jany's sons; with her ex-husband Michael Louis-Jacques of Brooklyn, New York, Farroll, and Jamil Louise-Jacques; who only washed Abdul-Ghani once, was required to wash Abdul-Ghani's body every other day with Siraj for approximately four months until the weather became warmer...". Next it must say, "At that point, Abdul-Ghani's body was moved to a compartment in the tunnel, where it was cooler." As evidence only suggests that said body was initially in a storage compartment under Hujrah's bed and then moved to the tunnel when the weather got warmer. Thus, "intially moved to a storage shed before it was moved to a tunnel" must be omitted. It must say, "he would instruct Siraj and Jany and Farroll on what corrupt people they were suppose to deliver the "message" to", not "instruct them on what corrupt institutions...they needed to "get rid of", as this is a misinterpretation of the facts. Initially, DEFENDANTS minor children were not definitive on the logistics as to what was actually planned to happen. Farroll included himself and his parents in this venture and initially said DEFENDANT'S role was to be a mentor for boys, per interviews and trial testimony. Thus this statement must either be corrected or omitted as it is prejudicial to DEFENDANT who was not aware nor included in these allegations about "corrupt institutions" especially schools which the minor children vehemently denied any involvement thereof. The "they" referred those tasked with delivering "the message". Here it can be inferred that "they" means all the DEFENDANTS and possibly their children when evidence is not supportive of this. Thus it must be corrected specifically or omitted to prevent prejudice.

19. Must omit "Lucas" from being included in those who trained as evidence no where has supported this Governmental allegation. Farroll and Jamil have consistently said they were trained by their step-dad, and that Lucas attended the training with them. It must say, "so he instructed Jamil and others...", and not, "he and Lucas instructed Jamil and others..."

It must say that, "which; in Farroll's opinion, meant killing in the name of ALLAH." As two Muslim adults; Jamellah Jihad and Muhammad Wahhaj realistically defied jihad as it appears in the Quran to mean, "struggle". And not, "which meant killing in the name of ALLAH."

It must say that, "at least one of the videos shows a child aiming a pistol at a target from a moving motorcycle." The video does not show a shot being fired as Mr. Hunt was misled to believe. Firing must be omitted and replaced with aiming or pointing. The entire sentence pertaining to, "Siraj's stepmother...an Islamic camp.", must be corrected or omitted altogether as no letter was ever presented, though it could be inferred/assumed that this letter is the same letter that was addressed to Muhammad, in which it does not mention that Jany visited an Islamic camp. So, "and that Jany had recently visited an Islamic camp must be omitted if the inference/assumption of said letter to Micheal being one and the same as that which was sent to Muhammad.

20. "By late January 2018...$122,000", must be omitted as misstates the facts in this case $29,767.62 is the accurate figure that reflects the superseding indictment investigatory time period. This original figure is prejudicial because it does not reflect what was spent during said period juxtaposed to what was spent before Lucas became involved with the Wahhaj family emergency of 12/2/2017. Doc 85 p2/GE99.

It should be noted that one unsuccessful effort was a civil suit for eviction in which the judge on the case dismissed the case with prejudice in favor of the DEFENDANT. No evidence was ever presented that DEFENDANT "began speaking of, and preparing for, what they believed was the imminent resurrection of Isa. DEFENDANT'S messages to family and friends never spoke of such a feat, nor were any evidence of "preparations" presented to support this flagrant allegation. There may have been messaging between Jany and her brother Von Chelet in Haiti, though that does not mean that DEFENDANT had anything to do with those chats/messages. Thus it must be corrected with, "Jany also began speaking of, and preparing for, what she believed was the imminent resurrection of Isa."

22. It must say that, "At this point, Siraj, and Farroll armed themselves and were ready to defend the compound." With the exclusion of "Lucas", who at the time of said warrant's execution was not once seen in possession of a

firearm, and thus DEFENDANT'S name must be omitted from this allegation. Again, "felony" must be omitted and "adult arrest" replaced per order of said adult arrest order which bares no "felony" term upon it.

It must say that, "Lucas was also arrested for harboring or aiding a wanted "fugitive"." As Siraj was not considered to be a felon, without having a criminal history of felonious conduct.

Transcripts of DEFENDANT'S conversation during said execution on 8/3/2018 did not reveal that he at anytime told law enforcement that he was "a prophet", nor that DEFENDANT "accused the agent of being against Go due to being a representative of the government". Thus this deception must be omitted as there is no evidence of this on 8/3/2018 as depicted at #22.

27. It must say, "Additionally, Farroll stated that his step-dad spoke of Jihad, and Jany had mentioned becoming a martyr on two occasions: once in her Journal pertaining to Lucas being martyred for defending their old household at 160 Iris Ct., Riverdale, GA and in Muhammad's letter inviting him to die as a martyr by joining the righteous (us) out in Amalia, NM. Jany believed Isa would return from the dead and reveal "the truth" the first week of August 2018." As evidence showed that Jany only messaged these sentiments to her brother in Haiti, and said messaging can not be attributed to the DEFENDANTS without proof that this is what they all actually believed

28. DEFENDANT objects to this number in its entirety as no evidence was ever presented suggesting that he conspired with anyone to commit any crimes against anyone a steadfastly maintains his innocence from his wrongful conviction.

29. DEFENDANT objects to this number in its entirety as no evidence was ever presented suggesting that he had anything to do with the issues surrounding Abdul-Ghani, and per trial evidence, he only became aware of the ordeal on December 31st when he was confronted by law enforcement in front of Muhammad Wahhaj's apartment building.

30. DEFENDANT objects to this number in its entirety and moves the Court to honor his request of Rule 32(i)(2) to clarify the record of these flagrant allegations that he somehow "knew" of the information contained within #30 whilst never holding any conversations with Hakima Ramzi.

31. DEFENDANT objects to being branded with the role of a manager or supervisor. The only eyewitnesses in this case made it clear during interviews that DEFENDANT'S role was a mentor/teacher for male youths. This governmental positioning is prejudicial and must be supported or omitted since there was no evidence presented ever in support of this flagrant claim.

## CONCLUSION

In consideration of the foregoing, DEFENDANT respectfully requests that this Court direct United States Probation to modify the provisions of his PSR in accordance with language described above, and for such other relief the Court deems necessary and proper.

Respectfully Submitted,

Lucas Morton
C.C.C.C
P.O. Box 3540
Milan, NM 87021
02/29/2024

Lucas Morton @ee1308
eeee 0041315?
P.O. Box 3540
Milan, NM 87021

RECEIVED
D STATES DISTRICT COURT
JQUERQUE, NEW MEXICO
MAR 0 4 2024
MITCHELL R. ELFERS
CLERK

Legal Mail
3-1-2024

U.S. District Court of New Mexico
333 Lomas Blvd NW Suite 270
Albuquerque, NM 87102

CERTIFIED MAIL
9589 0710 5270 0449 2988 98

FIRST-CLASS

